IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

```
ADDISON REDDICK,            *
                            *
     Plaintiff,             *
                            *
                            *       CIVIL ACTION NO.
     v.                     *       CV 616-051
                            *
BENJAMIN LIENHARD,          *
                            *
     Defendant.             *
```

O R D E R

Before the Court in the captioned matter is a motion for summary judgment filed by Defendant against Plaintiff's sole claim in the case, a false arrest claim under 42 U.S.C. § 1983. Upon consideration of the record evidence, the parties' briefs, and the relevant law, the motion for summary judgment (doc. 10) is **GRANTED**.

I. FACTUAL BACKGROUND

On July 4, 2014, Defendant Benjamin Lienhard, an Investigator with the Bulloch County Sheriff's Department, and other members of the county crime suppression team met with an informant who stated that he could have Arizona Zeb Connell deliver heroin to the officers in a sting operation. Defendant planned to pose as a heroin buyer. (Dep. of

Benjamin Lienhard, Doc. 9-1, at 13-14, 17-19.) The informant contacted Mr. Connell and told him what kind of vehicle the buyer (Defendant) would be in for their meeting. (Id. at 14.) Mr. Connell changed the meeting place on that day two times before settling upon Parker's convenience store. (Id.)

Defendant drove to Parker's and parked in a parking space. Thereafter, Mr. Connell and Plaintiff Addison Reddick pulled up in a white Honda Civic and parked a couple of spaces down from Defendant. (Id. at 14-15.) Although Mr. Connell was driving the Civic, Plaintiff owned the vehicle. (Dep. of Addison Reddick, Doc. 13-1, at 23-24.) When the Civic pulled in, Defendant did not know the occupants' identities. (Lienhard Dep. at 14.) Once Mr. Connell exited the vehicle, the other observing members of the crime suppression unit identified him.[1] The officers followed Mr. Connell into the store and confronted him. (Id. at 15.) Meanwhile, Defendant approached the Civic, in which Plaintiff had remained. (Id.) Defendant identified himself to Plaintiff, explained why he was there, and asked basic questions. (Id. at 15-16.) After Plaintiff identified herself, Defendant recognized her name and knew that she had been previously convicted of possession

---

[1] Plaintiff testified that she had gone first into the convenience store to use the restroom and then returned to the passenger seat before Mr. Connell left the vehicle. (Reddick Dep. at 32-33.)

of cocaine.[2] (Id. at 16, 63-64.)

According to Plaintiff, Defendant informed her that she was going to jail for being a part of a drug sale. (Reddick Dep. at 40.) Plaintiff told the officers that she did not know anything about drug activity. (Id. at 45.) Nevertheless, after Plaintiff was detained in a patrol car, a police canine made a positive alert on the Honda Civic, indicating the presence of drugs. (Lienhard Dep. at 16.) Defendant and his colleagues then began searching the car. (Id.) While searching, Defendant observed small pieces of a white, rock-like substance on the floorboard where Plaintiff had been seated. (Id. at 17, 24 & Ex. 1.) The substance looked like crack cocaine to Defendant. (Id.) Defendant performed a field drug test on the substance. The field test involved opening a vial containing certain chemicals, placing the substance in the vial, and observing whether the substance changed color. A color change to blue indicated a positive result for cocaine. Defendant followed these steps and observed the substance turn blue inside the vial. (Id. at 25, 41, 50 ("The best of my recollection was that the substance turned blue inside the vial that was emersed (sic) in liquid.").)

---

[2] Plaintiff had been arrested in 2008, at age 17, for possession of cocaine. (Reddick Dep. at 8-9.) Defendant had been involved in the investigation. (Id. at 9-10; Lienhard Dep. at 62-64.)

3

For her part, Plaintiff contends that the field drug test was not positive. She claims that she saw Defendant pick up a substance from inside the car and place it in a field test vial. She claims the vial did not change color and that she witnessed the officers throw the vial in nearby bushes. (Reddick Dep. at 46-48.) The officers then came over to Plaintiff and asked her whose cocaine it was. (Id. at 47.)

Plaintiff was placed under arrest and transported to the Bulloch County jail. Plaintiff retrieved the vial from the bushes after she bonded out of jail.[3] (Id. at 49.) The vial was retained by her parents and then turned over to her attorney.[4] (Id. at 49-50.) Plaintiff contends that when the vial was retrieved from the bushes, there was no blue coloring in it. (Id. at 51.) Plaintiff insists that the substance pulled from the car was actually biscuit crumbs.[5] (Id. at 35.)

---

[3] The elapsed time between arrest and retrieval of the vial was about 36 hours. (See Reddick Dep. at 53.)

[4] The vial was produced by Plaintiff's attorney at her deposition over two years later, at which time it was examined and photographed. (Reddick Dep. at 48-49 & Ex. 1.) Plaintiff testified that when she retrieved the vial, it had more liquid in it and did not contain any blue droplets or flakes. (Id. at 49.) She testified that "[e]verything was still at the bottom of the vial." (Id. at 50.) Yet, an examination of the vial at deposition revealed a few blue droplets or flakes. (Id.)

[5] Plaintiff remembers that two days prior to her arrest, she shared a biscuit with her dog in the car that she had just cleaned and that the dog made a mess on the floorboard. (Reddick Dep. at 35.)

4

Defendant's report of investigation does not mention that he conducted a field test of any substance. (Lienhard Dep. at 39-40 & Ex. 1.) However, Defendant testified at deposition that he conducted the test and that it was positive for cocaine. (Id. at 27-28, 41.) He could not recall what he did with the vial after the test. (Id. at 45.) Defendant further testified that it is his agency's practice to "dispose of" the field test vial, typically in a trash can. (Id. at 45-48.)

In addition to the field test, Defendant collected a sample of the white substance on the floor board as evidence. (Id. at 51-52 & Ex. 5.) The Georgia Bureau of Investigation ultimately determined, however, that the collected substance was not a controlled substance. (Id., Ex. 6.)

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all

5

justifiable inferences in [its] favor," United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, . . . no reasonable jury could find for the non-moving party." Four Parcels, 941 F.2d at 1438. On the other hand, if the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways--by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones

v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If--and only if--the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. Again, how to carry this burden depends on who bears the burden of proof at trial. If the movant has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor. Anderson, 477 U.S. at 249. If the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged

7

evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed. R. Civ. P. 56.

The Clerk has given Plaintiff notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. 12.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### III. LEGAL ANALYSIS

The sole claim in Plaintiff's complaint is a claim for violation of her Fourth Amendment right to be free from an unreasonable search and seizure, i.e., false arrest.[6] Through his motion for summary judgment, Defendant contends he is

---

[6] Section 1983 creates a federal remedy for the deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States by a person or persons acting under color of law. Wideman v. Shallowford Community Hosp., Inc., 826 F.2d 1030, 1032 (11th Cir. 1987). There is no dispute that Deputy Lienhard was acting under color of state law.

8

entitled to qualified immunity on Plaintiff's claim, and therefore, the Court should grant summary judgment in his favor.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) and Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)) (alteration and internal quotation marks omitted). "Qualified immunity from suit is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation and internal quotation marks omitted). In other words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Robinson v. Payton, No. 14-1962, 2015 WL 3937653, at *3 (8th Cir. June 29, 2015) (citing Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)).

To receive qualified immunity, the government official must first prove that he was acting within his discretionary

9

authority. <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing <u>Vinyard</u>, 311 F.3d at 1346). Here, Plaintiff does not dispute that Defendant was acting within the scope of his discretionary authority during the arrest. The burden now shifts to Plaintiff to show that qualified immunity is not appropriate. <u>Gray ex rel. Alexander v. Bostic</u>, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting <u>Lumley v. City of Dade City, Fla.</u>, 327 F.3d 1186, 1194 (11th Cir. 2003)).

Courts utilize a two-part framework to evaluate the qualified immunity defense. First, as a threshold inquiry, the Court addresses whether the plaintiff's allegations, if true, establish a constitutional violation. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). If the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated, then the Court asks whether the right violated was clearly established.[7] <u>Id.</u>

### A. Constitutional Violation

An arrest without probable cause violates the Fourth Amendment. E.g., <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1232 (11th Cir. 2004). Even so, an officer can avail himself of the qualified immunity doctrine if he had *arguable* probable

---

[7] This Court has the flexibility to first consider whether a right was clearly established before determining if a constitutional right was violated. See <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009). However, the facts of the present case are best suited for the traditional <u>Saucier</u> analysis.

10

cause for the arrest. Id. (citing Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999)); Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010) (for qualified immunity to apply, a defendant "need not have actual probable cause, but only 'arguable' probable cause").

"The standard for arguable probable cause is whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." Eubanks v. Gerwen, 40 F.3d 1157, 1160 (11th Cir. 1994). "This standard permits law enforcement officers to make reasonable mistakes with regard to the existence of probable cause without being held personally liable." Bradley v. Tucker, 2015 WL 64944, at *8 (S.D. Ga. Jan. 5, 2015) (citing Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)).

In this case, Defendant arrested Plaintiff for possession of cocaine. Thus, in order for probable cause to arguably exist, Defendant must have reasonably believed that Plaintiff possessed cocaine. The *undisputed* facts show that Defendant knew the following at the time of Plaintiff's arrest: (1) that Plaintiff arrived at the store with a suspected drug dealer; (2) that Plaintiff had been arrested previously for possession of cocaine; (3) that the police canine alerted to her car

11

indicating the presence of a controlled substance; and (4) that there were small pieces of a white, rock-like substance on the floorboard where Plaintiff had been seated. Defendant would add that he also field tested the white substance and determined that it was cocaine. This fact, however, is disputed because of Plaintiff's testimony that she did not observe "the vial change colors." (Reddick Dep. at 47.) The fact that she observed Defendant simply throw the vial in the bushes, which she later retrieved, could also be evidence of a negative test result in the minds of reasonable jurors.[8]

The question then is whether a reasonable officer in Defendant's position at the time of arrest, knowing all of the undisputed facts but also knowing that the field test was negative for cocaine, had arguable probable cause to arrest Plaintiff. There can be no doubt that if the test was conclusively positive, probable cause existed. Also, without any field test, an officer would have probable cause to arrest Plaintiff for possession of cocaine. Yet, what of the officer

---

[8] The fact that it is common practice to dispose of the vials negates this inference. So too does the presence of blue droplets or flakes in the vial at deposition. Nevertheless, little can be conclusively learned from the condition of the vial upon retrieval 36 hours later and certainly not two years later at deposition. Indeed, whether or not the vial contained "blue" is immaterial to the present inquiry as the Court must construe the evidence in the light most favorable to Plaintiff, which is that the vial was thrown in the bushes and did not indicate a positive test result.

who conducts a field test that yields a negative result? Here, the Court focuses on the uncontravened testimony of Defendant, who testified that the use of a field test is within the officer's discretion. (See Lienhard Dep. at 9.) More importantly, the decision of whether to arrest is not solely based on a field test. (Id.) While the field test can be used to help build probable cause, ultimately, every suspected narcotic is sent to the crime lab for testing "regardless of whether it tests positive or negative." (Id. at 10.) Accordingly, even if the field test proved negative, a reasonable officer could still arrest a suspect if he has probable cause to do so in the absence of the field test. That is, a negative result in a field test does not negate the other elements of an officer's probable cause to arrest.[9]

Upon these facts, even assuming that Defendant's field test yielded a negative result for cocaine, a reasonable officer in his position at the time of arrest still could have believed that Plaintiff possessed cocaine based upon her presence at a drug transaction, her prior history with cocaine, the canine alert, and the presence of what appeared to be crack cocaine on the floorboard. Thus, Defendant had

---

[9] The Court notes that there was absolutely no evidence that Defendant acted with any malice or bad faith toward Plaintiff.

arguable probable cause for the arrest, and the arrest did not violate the Fourth Amendment.

B. **Clearly Established Law**

If no constitutional right was violated, the Court need not address whether the defendant violated clearly established law. Saucier, 533 U.S. at 201. Nevertheless, the Court will do so.

There are three ways in which a plaintiff can show that a right is clearly established: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1291-92 (11th Cir. 2009) (citations omitted).

In this case, Plaintiff does not cite any case law in which an officer was found to have made a false arrest under materially similar circumstances.[10] See Terrell v. Smith, 668 F.3d 1244, 1256 (11th Cir. 2012) ("[P]laintiffs may establish

---

[10] Plaintiff would need to present case law in which an officer was found to have violated the Fourth Amendment despite the fact that he had probable cause to arrest but for a negative field test.

14

that the right was clearly established by pointing to a 'materially similar case' decided by the Supreme Court, this Court, or the [State] Supreme Court."). In fact, Plaintiff does not address the "clearly established" prong of qualified immunity in brief even though the burden rests with her to show the defense is inappropriate.

The Court then assumes that Plaintiff is relying upon the general proposition that an arrest without probable cause is unconstitutional. The Supreme Court, however, has recently reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, --- U.S. ---, 137 S. Ct. 548, 552 (2017). Indeed, the Eleventh Circuit has made clear that "obvious clarity" cases are rare. Coffin v. Brandau, 642 F.3d 999, 1015 (11th Cir. 2011); Rodriguez v. Farrell, 280 F.3d 1341, 1350 n.18 (11th Cir. 2002) ("We very occasionally encounter the exceptional case in which a defendant officer's acts are so egregious that preexisting, fact-specific precedent was not necessary to give clear warning to every reasonable . . . officer that what the defendant officer was doing must be 'unreasonable' within the meaning of the Fourth Amendment."). The critical inquiry for this Court is whether the law provided this Defendant "fair warning" that his conduct violated the Fourth Amendment. See Hope v. Pelzer,

536 U.S. 730, 739 (2002), cited in, e.g., McClish v. Nugent, 483 F.3d 1231, 1248 (11th Cir. 2007); Coffin v. Brandau, 642 F.3d at 1013-14 (stating that the touchstone of the clearly established inquiry is whether the unlawfulness of the conduct would be apparent to a reasonable officer). In this case, the Court determines that it is not obviously clear that a negative field test for the presence of cocaine will negate the other elements of a probable cause determination for a drug possession arrest to the point that the arrest violates the Fourth Amendment. That is, Plaintiff has not shown that her arrest went well beyond anything that a reasonable officer would have considered reasonable under the circumstances.

## IV. CONCLUSION

Upon the foregoing, Defendant's motion for summary judgment (doc. 10) is **GRANTED**. Accordingly, the Clerk is directed to **ENTER JUDGMENT** in favor of Defendant, **TERMINATE** any remaining motions and deadlines, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 27th day of June, 2017.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA